My name is Robin Abraham. I'm the former Judicial Law Clerk to the Honorable Susan H. Black, now Senior 11th Circuit Court Justice. I'm here making a very unusual request that this Court vacate all orders in the lower case beginning in docket number 268 due to what can only be called egregious misconduct of opposing counsel in this case. Your Honors, may it please the Court, Arnold and Porter filed this Man of La Mancha case as an open and shut case of serial defendants, fraudulent inducement, and breach of appellants performed exclusive production contract, pursuant to which defendants benefited, used plaintiff services resulting in the 2025 London performance of Man of La Mancha, pursuant to which defendants received substantial financial benefit. Two of the three defendants in this case settled in appellant's favor with Defendant Leigh's 40-year-plus business manager, accountant, and self-described fixer, Alan S. Honig, who provided a file declaration in this case that appellees committed fraud against appellant by contracting the same Man of La Mancha rights, exclusive rights, to a third party without notice to appellant. Whilst this case should have been an open and shut breach of contract case with full performance damages, pursuant to which these same defendants have engaged in at least 12 similar cases of serial contracting services, breach of contract, using services, and in their words, crushing opposing counsel, this is not what this is. Instead, just as Man of La Mancha is a play within a play, so too is this case. That which occurred began on docket number, I'm sorry, you interrupt? Am I? Okay. Docket number 268 is the notice of appearance by an attorney who has been sanctioned by the Second Circuit named Colleen Neet Chermerick, Colleen Savino, also known as Colleen Kerwick, who targeted appellant on behalf of opposing counsel as an experienced Florida attorney where this regularly happens. These are called Trojan horse attorneys who target a certain quote client to effect sabotage of the case on behalf of opposing counsel. In this case, there are four Trojan horse attorneys. Colleen Kerwick, who admitted in court record documents that she targeted appellant after vacationing with Cozen O'Connor, that's opposing counsel, in Ireland prior to filing the notice of appearance. As confirmed by the dockets in this case, she then proceeded to file a notice of appearance and enter a series of pleadings on behalf of opposing counsel to sabotage the case. Moreover- Mr. Chairman, can I, I do have one thing that is hard as a reviewing court, and you can probably appreciate this from your own experiences, a sort of broad statement that all orders should be vacated on the basis of these sort of broad allegations. Can you tell us what the specific legal errors are in the specific legal orders that you're looking at? Is there a way to be more concrete? Thank you, your honor. I'm happy to do so because the key point in this is that on October 7th, 2019, a Washington, D.C. political lobbyist named Wyss Partners physically ambushed appellant in court and demanded appellant settlement money. Now, as confirmed by the docket, and as I'm sure your honors know, that for any attorney to appear in a case, they have to file either a notice of appearance or pro hoc vici. Wyss Partners did not do that. They appeared in court with Kerwick claiming to represent me with no retainer agreement, etc. And after being advised in open court, the Honorable Judge Fala, that Wyss Partners never was my attorney and produced no retainer agreement, never filed any pleadings, the court ordered payment of plaintiff appellant settlement funds to Wyss Partners, who is not even a party in this case. Not a party, not a lawyer, nothing. So I take it that one of the orders that you're appealing, or that you're challenging on appeal, is the order requiring the people who claim to be your counsel that some funds be paid to them, basically attorney lien sort of thing. Your honor, I wish it were that simple. I'm going to go through the litany because what happened was, essentially what we're reading about is the political undue influence of the courts in which Wyss Partners met privately with Judge Fala in chambers on October 7, 2019, not only to discuss my case, but also to discuss PDVSA cases, which Wyss Partners represents on behalf of Venezuelan dictator Maduro. This case, in other words, there are three cases that were ex-partied by a Washington, D.C. political lobbyist. This case has reversed the PDVSA cases, which are represented by Wyss Partners, again with no filing of any notice of appearance pro hofice, and this was Second Circuit case 20-3858. So on October 7, 2019, Wyss Partners met in chambers with Judge Fala, essentially demanded my settlement funds and threatened that all orders following, if I did not continue paying, Wyss Partners demanded monies, that all orders would be entered against me. And exactly that which Wyss Partners threatened, in fact, occurred. So have these allegations been adjudicated anywhere? No. Did you raise these in the district court? I did raise these, and there are 3,000 pages of documents, Your Honor, where these issues were raised. They were sealed, stricken, and deleted. Can you tell me the docket number of the district court's ruling on your allegations about the improper meetings? Because that sounds like it's a ruling you're asking us to review. I couldn't tell from your brief which rulings you would like us to review. Okay, because, Your Honor, I have the docket in front of me, and I'm... Rather than take time, because you don't have much time, if you send us a short letter afterwards, just like today, just saying the order involving the ex-party meetings is docket number whatever, not argument, not other discussion, but just tell us the number, then that'd be great. And may I continue, Your Honor, because these orders were all at the behest of Wyss Partners, pursuant to which Wyss Partners also influenced PDVSA, pursuant to which this court reversed on an issue of law regarding the application of New York law to a completely Venezuelan case. And again, these are Wyss Partners. Okay, but how does... I don't understand... I mean, I was on that other case. Okay. I wrote it, right? So I know... And there's nothing about ex-party meetings and other things. How does any of that have to do with the judgment on the breach of contract claim that you brought and the judgment on the counterclaim? I don't understand what your arguments are in that case. I just want to give you every opportunity to tell us the legal arguments in your case that you want us to review. Okay, yes. Thank you, Your Honor. That which Wyss Partners threatened and was continued allowed to appear in court resulted in a slew of court orders, which I have documented from the court order payment of the settlement funds to the judge interfering in a DC bar complaint on behalf of the lobbyist. Okay, but any interference with a DC bar complaint is not within the scope of your appeal here. So you've identified the payment of the settlement funds. Motion for summary... I assume you're saying that that order was legally wrong, and it sounds like your contention is that it was procured by some sort of fraudulent means. Yes. Okay. What other orders in the docket in this case have you raised a legal challenge to? Yes, the court order sealing, striking, and deleting 3,000 pages of all appellant's favorable evidence, the court approval of political lobbyist Wyss' representation of opposing counsel with knowledge that Wyss did not comply for case admission and is not listed on the docket, and then with regard to the court, this is Judge Vela's suspension of appellant's PACER rights. When appellant was required to file a motion for summary judgment, it was impossible to do so. It was literally what's called the Brooklyn Playbook, in which that which Wyss partners threatened due to my refusal to pay documented blackmail extortion resulted in the court orders which Wyss partners threatened, including the court order of default judgment on behalf of the appellee while appellant was hospitalized in California.  And I'm mindful you've reserved three minutes and we've gone over a little bit, and that's because I was asking you some questions. So why don't we hear from the other side, and then we'll hear back from you in rebuttal. Okay. Thank you, Your Honor. Well, good morning, Your Honors. H. Robert Feeback for Executrix Abby Lee, the estate of Mitch Lee. I just wanted to say to the court, based on the statement made by appellant, that I had no connection at all with the Kerwick engagement. And there is no evidence in this case that we were involved in any way. And the document that is in the record, in the printed record from Kerwick relating to being on a vacation with members of my firm, I point out it's hearsay. It's never been authenticated in this record, and we have no knowledge of that. And I would say on the record that I did, when this issue was raised, I sent an email around to every lawyer in my firm and asked the question, does anybody know this person,  And no one responded to the email. I know that's not in the record, but since the allegation has been made, I wanted to respond to it. May it please the court, I am going to address the issues raised by appellant, and I'm here with Tamara Wise, and she will address the issues relating to our counterclaim. This case should have been dismissed as a sanction. This is our cross appeal, your honors. The Ms. Abraham was found to have falsified 33 documents in this case. The document on which you- If we're firm on the case in chief, does that essentially moot your cross appeal, because the case goes away either way? Well, your honors, we know that this case is going to keep going. I mean, whatever you do here, if I assume that you're going to affirm, which your question might raise, then she's going to probably ask for- Okay, that's going to be true no matter what, if you're right about that. My question is, would an affirmance on the appeal in brief moot the cross appeal for purposes of our adjudication now? It would if it's a final, if it's final. But if it's not final, if it's subject to further appeals or further, it would not. Sure, I mean, if it gets reversed, it would change the-  Right, okay. But I'd point out that she's a lawyer. She falsified 33 documents. One of the documents falsified was attached to the complaint and purported to relieve her of some of the obligations under the agreement that she sued on. And in the court's opinion on summary judgment, the court, and that was one of the documents that was falsified, and the court said that she relied on that document in denying our motion to dismiss. So the plaintiff has actually created a situation where we were exposed to expensive and long-term litigation, which should have been dismissed at the motion stage. And she profited because she was able to settle with some of the other defendants without having to, because they didn't want to go through a lengthy trial, a lengthy and expensive trial. The court, Your Honor, did correctly grant summary judgment in the court below. The talent agreement, which the plaintiff relied on, required her to get a leading actor and required her to request terms and conditions and availability of a director, co-producer, and leading actor. As the court found in her opinion, leaving out the letter which had been attached to the complaint, which was one of the 33 documents falsified, that she did not meet the condition of finding a leading actor. And also, based on the deposition testimony of the co-producer, that she never requested terms and conditions or availability. Plaintiff has referred to the Alan Honig affidavit, who, by the way, recently passed away. As the court below said, the affidavit itself does not say that Mr. Lee had entered into an agreement with Manny Kalaitis. She bases this on an unsigned, blank contract that was produced in discovery. And Mr. Honig testified in his deposition that he has no knowledge as to whether or not it was ever signed. And Mr. Kalaitis testified in his deposition, as the court below found, that it had never been signed. The many attacks that the appellant makes on the trial judge are completely lacking in evidentiary support or are refuted by the record. An example is that she says that Judge Faya breached a random assignment and requested the case be assigned to her. Our supplemental appendix at pages 18 and 19 show that her lawyer filed this case as a related case that was pending before Judge Faya. And there's just nothing to it. And there is no, with regard to allegations that the judge interfered with a Florida guardianship. So I'm mindful that you've split your time. I'm fine if you want to continue, but that will come out of Attorney Wise's time. So I will yield. I just want to say that Judge Faya's opinion on that is at page 194 of our special appendix. Thank you, Your Honor. Thank you. May it please the court. My name is Tamar Wise. And I'm going to briefly address the propriety of the district court's imposition of sanctions in the form of a default judgment on the executrix's counterclaim. That order is reviewable by this court for an abuse of discretion. And the district court's assessment of credibility is also reviewable for abuse of discretion. Did you find any place in the appellant's brief where she made any legal arguments challenging that ruling? Or are you sort of here as belt and suspenders, just in case we're inclined to consider it  So charitably read, Your Honor. There are kind of throwaway lines about suggestions that the district court's default judgment ignored that appellant gave advance notice of an illness. I did not see legal argument. And we had presented to this court our position that the order on the default judgment was not included with the special appendix originally filed. And so it's not right for this court's decision. But in any event, we are going to just briefly address it for the sake of completeness. Although it's not really what's in the appendix that determines what's before us, right? We have access to the full record. Yes, Your Honor. So the district court's order amply sets forth the grounds for this default judgment based on the court's discretion, the court's observations throughout the course of two years of trying to schedule this bench trial. There were seven 11th hour requests to adjourn scheduled trial dates for various reasons. And when the May 5th trial date actually arrived, the request to adjourn this particular bench trial scheduled for months was particularly suspicious in light of prior last minute adjournment requests. Appellant's suggestion that she had COVID but didn't make the request for an adjournment until two days later, which was the day before the trial was supposed to take place. And the fact that appellant was able to make two lengthy motions while she was ill to request the adjournment. The district court accommodated appellant in the best way by allowing a virtual trial. But even still, appellant was not participating in the way that the rest of the parties were able to participate. The district court issued an order to show cause asking the appellant to substantiate with evidence various statements made in the course of seeking an adjournment of this bench trial. The responses to that order to show cause were entirely deficient with clear evidentiary voids, including the submission of documents that were very suspicious for inauthenticity. And taken together, this shows conduct in bad faith and without justification that, you know, supports the district court's finding that sanctions were warranted. And given the prior obstructionist behavior and that were unabated by lesser sanctions, the district court was well within its discretion to impose the sanction of a default judgment on the counterclaim. If Your Honor has no further questions, we rest in our papers. Thank you. Appreciate it. Attorney Abraham. Thank you, Your Honor. In response to their very creative arguments, there is not one email between appellant and their client that does not match up to the letter. Not one. Notwithstanding that fact, just as the Honorable Judge Fela ordered that a Washington, D.C. political lobbyist, Wyss, who never filed a motion to pro hoc vicee and represented O'Connor in hearing after hearing after hearing, was my attorney to whom the court ordered payment of my partial settlement funds, the court found emails which do not exist in the court record. Now, perhaps it was a clerical error, but the bottom line is that that which Wyss partners threatened resulted in a series of court orders that are contrary to the facts. And those orders include what the court asked for, the court order sealing, striking, and deleting 3,000 pages of Arnold and Porter produced favorable evidence for appellant. These were struck, sealed, and deleted. Additionally, what was very clear is that Ms. Kerwick is one of four, four Trojan horse attorneys which were solicited by opposing counsel and filed false pleadings in this case. Those attorneys are, and each and every single one of them were sanctioned, is Joshua Douglas who appears in this case, filed a notice of appearance for me, and then filed a lawsuit in the Supreme Court on behalf of opposing counsel in my name. He was sanctioned by Chief Bankruptcy Judge Glenn, okay? He works with Colleen Kerwick. The two of them targeted another woman in a case named Dr. Micheline Epstein in New York Superior Court, and they're engaged in these lawfare attacks against people in furtherance of opposing counsel's interests. So with regard to the unusual request of vacating all orders since the appearance of Ms. Kerwick, docket number 268, on behalf of opposing counsel, the bizarre actions of a D.C. political lobbyist, receipt of partial settlement funds from appellant, having never even filed a notice of appearance or pro hofici in the case, being allowed to testify against appellant on behalf of opposing counsel, and there are thousands, excuse me, there are hundreds of these pages of documents of a D.C. political lobbyist never showing up, never filing the requisite files which this court requires. Wyss Partners is not admitted to the New York Southern District. Wyss Partners is not admitted to the Second Federal Circuit. Okay, Attorney Abraham. Thank you. Your time is up, and I just want to remind you, it sounds like you've spent the most time in your argument challenging the order requiring you, I think, by virtue of some sort of attorney lien to pay a portion of your settlement to the folks that you were just describing. If you can identify that specific order in a letter to us just by docket number with no argument by noon tomorrow, I would appreciate it. Otherwise, we'll go ahead and we'll consider the case without that specific identification.  Your Honor, may I also respond that the rest of these orders are the result of this Wyss Partners political intervention? I think we hear you on that. I think we've got your argument. So thank you. We appreciate it. Thank everybody for your arguments, and we will take your advice.